**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO.  25-477-2** |
| | : | |
| **ANTAR WILLIAMS** | : | |

## MEMORANDUM WITH FINDINGS OF FACT

**KEARNEY, J.**                                                                                      **May 28, 2026**

Our Grand Jury charged Antar Williams with illegally possessing a firearm as a felon on November 4, 2025.[1] Mr. Williams timely moved to suppress the firearm—which officers recovered from another person's vehicle—and a post-arrest statement.[2] We denied Mr. Williams's Motion to suppress two weeks ago to aid the parties' trial preparation and now enter Findings of Fact and our analysis to further guide the parties for trial.

### I.    Findings of Fact

1.    Pennsylvania law enforcement knew of two Pennsylvania parole fugitive warrants outstanding for Philadelphian Nicholas Blackshear as of June 17, 2025.

2.    The Pennsylvania Office of Attorney General Gun Violence Task Force Special Agent Kyle Boyd observed Mr. Blackshear on June 17, 2025 walking on Seventh Street in Philadelphia with a gait indicating he carried a firearm between his underarm and his chest consistent with Special Agent Boyd's experience.

3.    Special Agent Boyd witnessed Mr. Blackshear enter the passenger side of a black Toyota Prius registered to Alfredo Marrero.

4.    Messrs. Marrero and Blackshear avoided further detection as they drove away from the vicinity of Special Agent Boyd's surveillance.

5.    The next day, June 18, 2025, Special Agent Boyd requested assistance from

Philadelphia police officers and the Pennsylvania Office of Attorney General's drone unit to monitor the Toyota Prius and Mr. Blackshear.

6.    Pennsylvania Attorney General aerial surveillance along with Special Agents Boyd and Michael Solomon surveilled the 3100 block of North Seventh Street after 1:00 p.m.

7.    Mr. Marrero parked his Toyota Prius on the block at about 1:10 p.m.

8.    A Black male wearing a dark colored shirt and blue pants entered the Toyota Prius a few minutes later whom the special agents later identified as Antar Williams, a person on federal supervised release.

9.    Special Agent Boyd witnessed a silver Honda Accord driving northbound on the 3100 block of North Seventh and then parking in front of the Toyota Prius.

10.    Special Agent Boyd witnessed Mr. Blackshear leave the Honda Accord, walk down the block, and enter the rear driver's side passenger seat of the Toyota Prius with Alfredo Marrero and Antar Williams in the front seats.

11.    Philadelphia Officers William Thrasher and Pedro Martin possibly learned Mr. Blackshear was in the rear driver's side passenger seat of the Toyota Prius.

12.    Two teams of Philadelphia police officers responded and with pistols drawn surrounded the vehicle containing Mr. Blackshear noting the Toyota Prius had illegally tinted windows.

13.    The four Officers found the Toyota Prius occupied by Mr. Blackshear in the rear driver's side seat.

14.    Officer Martin immediately observed a handgun on the rear driver's side floorboard right below Mr. Blackshear.

15.    Officer Martin seized the firearm without serial number and loaded with rounds of

2

ammunition.

16.     The Officers then removed both driver Mr. Marrero and front seat passenger Mr. Williams from the Toyota Prius and handcuffed them for safety.

17.     Officer Thrasher then looked under the front passenger seat previously occupied by Mr. Williams and found another semiautomatic pistol Taurus International 9mm Luger loaded with fourteen rounds of ammunition in the magazine and one in the chamber.

18.     Special Agent Solomon seized the firearm below Mr. Williams and placed it into evidence.

19.     Mr. Williams told the officers of his ongoing supervised release.

20.     Officers learned Mr. Williams did not have a valid license to carry the Taurus 9mm found under him in the Toyota Prius.

21.     Officers arrested Mr. Williams along with Mr. Blackshear.

22.     Officers provided Mr. Williams with his *Miranda* rights.

23.     Mr. Williams made statements to Special Agent Solomon.

**II.     Analysis**

Mr. Williams moved to suppress the firearm and his post-arrest statement.[3] He argues we should suppress because the Officers recovered them after unlawfully detaining him.[4] The United States responds Mr. Williams does not have standing to challenge the Officers' search of Mr. Marrero's vehicle and, even if he does have standing, the evidence recovered is admissible because the Officers had probable cause and reasonable suspicion to search the vehicle.[5] We agree Mr. Williams does not have standing to challenge the vehicle search. But the seizures are lawful even if he enjoys standing to challenge them. We deny Mr. Williams's Motion to suppress.

**A.      Mr. Williams has standing to challenge his seizure.**

The United States asks us to deny Mr. Williams's Motion to suppress because he does not have standing to challenge the Officers' search as a passenger in Mr. Marrero's vehicle.[6] Mr. Williams responds he has standing to challenge the admissibility of evidence the Officers recovered from the car as the fruits of an illegal seizure.[7] Mr. Williams only has standing to challenge the evidence as fruits of his seizures.

The United States is correct Mr. Williams does not have standing to challenge the evidence based on an illegal search. To challenge the admissibility of evidence obtained from a search, "a person must have a cognizable Fourth Amendment interest in the place searched."[8] A person has a Fourth Amendment interest in a particular place when he has a "legitimate expectation of privacy" in it.[9] Passengers cannot challenge the admissibility of evidence discovered in a car because they do not have a "reasonable expectation of privacy in the interior of the vehicle in which they are riding."[10] Mr. Williams does not have a reasonable expectation of privacy over Mr. Marrero's vehicle.[11]

But Mr. Williams enjoys standing to challenge evidence the Officers obtained following his seizure. While passengers do not have a reasonable expectation of privacy over the vehicle, they do have standing to argue evidence found in the vehicle is inadmissible as fruit of an unlawful traffic stop or continuing detention.[12]

We thus consider whether the Officers lawfully seized Mr. Williams.

**B.      The Officers' first lawful seizure.**

The Officers' initial seizure of the vehicle is lawful. The Fourth Amendment protects individuals from "unreasonable searches and seizures."[13] A traffic stop "is a seizure of everyone in the stopped vehicle."[14] An officer usually must have a warrant based on probable cause for a

4

seizure like a traffic stop to be reasonable under the Fourth Amendment.[15] But there is an exception to the Fourth Amendment's warrant requirement allowing an officer to "conduct a brief, investigatory stop" if the officer "has a reasonable, articulable suspicion that criminal activity is afoot."[16] "We determine whether reasonable suspicion existed to support a stop under an objective standard and a totality of the circumstances approach."[17] We consider factors like an officer's "specialized knowledge and investigative inferences . . . [as well as] personal observation of suspicious behavior."[18] For example, an officer has reasonable suspicion sufficient for an investigatory stop where he has "personal knowledge 'that there was an active bench warrant for'" a person in the vehicle.[19]

The Officers knew there were two Pennsylvania parole fugitive warrants for Mr. Blackshear, another passenger in the vehicle. The Officers had reasonable suspicion justifying an investigatory stop.[20] The initial seizure of the vehicle and its passengers was lawful.

### C.   The Officers lawfully continued Mr. Williams's detention.

Mr. Williams argues we should suppress the evidence the Officers obtained from the vehicle because they unlawfully detained him after apprehending Mr. Blackshear and recovering his firearm.[21] The United States responds the Officers had reasonable suspicion to continue detaining Mr. Williams and the vehicle after discovering an unserialized firearm in it.[22] We agree with the United States.

Although an investigative stop might initially be lawful we still must consider whether the stop's progression "was reasonably related in scope to the circumstances which justified the interference in the first place."[23] We consider factors like "the law enforcement purposes to be served by the stop" and "the time reasonably needed to effectuate those purposes" to determine "whether a detention is too long in duration to be justified as an investigative stop."[24] Ensuring

officer safety during a stop is one relevant purpose. "[W]hen an officer has a reasonable basis for 'believing that the individual . . . is armed and presently dangerous,' he may 'take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'"[25] For example, an officer may handcuff the occupants of a vehicle until the scene is secured if he has a "reasonable suspicion that the occupants of a vehicle are armed and dangerous."[26] We ultimately "focus on the overall reasonableness of [officer] conduct in light of all the circumstances" to determine if an investigative stop remained reasonable.[27]

The Officers' decision to detain Mr. Williams until they finished searching the vehicle was lawful because they had a reasonable suspicion the vehicle's occupants were armed and dangerous. The Officers saw an unserialized firearm in the vehicle in plain view. Under the totality of the circumstances, the Officers reasonably detained Mr. Williams until they had finished searching the vehicle and securing the scene. We deny Mr. Williams's Motion to suppress.

## III.    Conclusion

Mr. Williams lacks standing to challenge the Officers' decision to search the vehicle. Although Mr. Williams can challenge the Officers' decision to continue detaining him while searching the vehicle, we find his detention is reasonable under the totality of the circumstances and he cannot challenge evidence obtained because of his seizure. We deny Mr. Williams's Motion to suppress.

---

[1] *See* ECF 1.

[2] *See* ECF 31; ECF 37.

[3] *See* ECF 37.

[4] *See id.* at 11–19; ECF 49 at 1–10.

[5] *See* ECF 40 at 6–25; ECF 48 at 4–10.

[6] *See* ECF 40 at 7, 14–15; ECF 48 at 4–5. We note the "'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated." *See United States v. Mosley*, 454 F.3d 249, 253 n.5 (3d Cir. 2006) (citing *United States v. Kimball*, 25 F.3d 1, 5 (1st Cir. 1994)).

[7] *See* ECF 49 at 1–5.

[8] *See United States v. Jackson*, 120 F.4th 1210, 1218 (3d Cir. 2024) (quoting *Byrd v. United States*, 584 U.S. 395, 410 (2018)).

[9] *See id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

[10] *See id.* at 1219 (quoting *Mosley*, 454 F.3d at 253–54).

[11] Even if Mr. Williams has standing to challenge the vehicle search, it is lawful. The Officers saw Mr. Blackshear's unserialized firearm in the vehicle after conducting a lawful stop. *See United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (explaining the three requirements for "valid seizures of evidence in plain view" are (1) "the officer must not have violated the Fourth Amendment in 'arriving at the place from which the evidence could be plainly viewed,'" (2) "the incriminating character of the evidence must be 'immediately apparent,'" and (3) "the officer must have 'a lawful right of access to the object itself'" (quoting *Horton v. California*, 496 U.S. 128, 141 (1990))). Observing Mr. Blackshear's unserialized firearm gave the Officers probable cause to search the vehicle. *See United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002) ("The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996))).

[12] *See Mosley*, 454 F.3d at 253 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)) ("[P]assengers in an illegally stopped vehicle have 'standing' to object to the stop, and may seek to suppress the evidentiary fruits of that illegal seizure under the fruit of the poisonous tree doctrine."); *Jackson*, 120 F.4th at 1219 ("[I]f either the stopping of the car, the length of the passenger's detention thereafter, or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit[.]" (quoting *Brendlin v. California*, 551 U.S. 249, 259 (2007))).

[13] U.S. Const. amend. IV.

[14] *See Mosley*, 454 F.3d at 253 (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)); *see also United States v. Hester*, 910 F.3d 78, 85–86 (3d Cir. 2018) (citing *United States v. Edwards*, 53 F.3d 616, 617–20 (3d Cir. 1995)) (explaining boxing a parked or idling vehicle can be a seizure).

[15] *See United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) ("Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause.").

[16] *See id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

[17] *See Hester*, 910 F.3d at 87 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)).

[18] *See id.* (quoting *United States v. Brown*, 448 F.3d 239, 247 (3d Cir. 2006)).

[19] *See United States v. Fields*, 176 F. App'x 327, 330 (3d Cir. 2006); *United States v. Dawkins*, No. 09-163, 2009 WL 3350451, at *3 (W.D. Pa. Oct. 15, 2009) (describing a stop as "clearly permissible" where officers "stopped the vehicle to execute an arrest warrant on the passenger of the vehicle . . . the subject of [a] warrant"), *aff'd*, 419 F. App'x 224 (3d Cir. 2011).

[20] The Officers also had probable cause justifying an investigatory stop. *Cf. United States v. Jarrett*, 999 F. Supp. 2d 828, 838 (W.D. Pa. 2014) (finding probable cause to "perform a traffic stop to investigate whether the driver was" a person with an "outstanding warrant" where officers testified they recognized the driver from a wanted poster).

[21] *See* ECF 37 at 11–19; ECF 49 at 5–10.

[22] *See* ECF 40 at 21–24; ECF 48 at 6–10.

[23] *See United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010) (quoting *Terry*, 392 U.S. at 19–20) (explaining to assess whether an investigative stop is reasonable we first "examine 'whether the officer's action was justified at its inception'—that is, whether the stop was supported by reasonable suspicion at the outset . . . . Next, we determine whether the manner in which the stop was conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'").

[24] *See United States v. Sharpe*, 470 U.S. 675, 685–86 (1985) (citations omitted); *see also United States v. Leal*, 235 F. App'x 937, 941 (3d Cir. 2007) (citing *Sharpe*, 470 U.S. at 684–870) ("In considering whether a stop is 'so minimally intrusive as to be justifiable on reasonable suspicion' . . . courts consider the duration of the stop, the law enforcement purposes justifying the stop, whether the police diligently sought to carry out those purposes given the circumstances, and alternative means by which the police could have served their purposes.")

[25] *See Johnson*, 592 F.3d at 452–53 (quoting *Terry*, 392 U.S. at 23) (explaining officers may take "steps . . . reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop" (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985))).

[26] *See id.* at 453 (citation omitted).

[27] *See id.* (citations omitted).